## Joseph S. Brown, Appellant, *v.* Samuel Eccles.

*Promissory notes—Fraud—Question for jury.*

Payment of a promissory note was resisted by one of the indorsers sued thereon on the ground that said note was given to take up another note of $1,000, on which same indorsers were liable, in possession of the plaintiff, which he claimed to hold as a bona fide holder for value, it having been deposited with him before maturity as collateral security for still another note of $500.

*Held,* that the jury was properly instructed that the alleged representations of the plaintiff that he held the $1,000 note as collateral security, if false, was a fraud and barred recovery.

*Contract—Fraud—Misrepresentations.*

Misrepresentations of a fact material to the issue, which were relied on by defendant and which he had a right to rely on and which produced the contract defended against, constitute a fraud which is a good defense to such contract.

Argued April 6, 1896. Appeal, No. 22, April T., 1896, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1892, No. 538, on verdict for defendant. Before Rice, P. J., Wickham, Reeder, Orlady and Smith, JJ. Affirmed.

Assumpsit on promissory note for $500. Before Ewing, P. J. Verdict for defendant.

The facts as stated in the opinion of the Superior Court are as follows:

The appellant, who was the plaintiff below, was the holder of two several promissory notes, one given by Joseph Blackshaw to the order of R. B. Boycott and by him indorsed for $500, payable thirty days after date. The other was drawn by the Iron City & Hammondville Improvement Company, dated April 9, 1892, for $1,000, payable three months after date, to the order of Blackshaw, Boycott & Bayliss Company, indorsed by the Iron City & Hammondville Improvement Company, per Samuel Eccles, treasurer, and Joseph Carr, W. W. Giffen, Samuel Eccles, W. T. Fraser and F. B. Gill. It was not indorsed by the payees. The latter the appellant alleged was held by him as collateral security for the former. The note of the Iron City & Hammondville Improvement Company, indorsed as

above stated, was not protested at its maturity. It was placed by the appellant in the hands of his attorney for collection and the indorsers notified of this fact. J. Morton Hunter, the attorney of Joseph Carr, one of the indorsers, and W. W. Giffen and W. T. Fraser, two of the other indorsers, visited the appellant and his attorney at different times, for the purpose, as is shown in the evidence, of ascertaining whether or not the appellant "was an innocent holder of the note for value." Upon the representation of the appellant that he held the note as collateral security for the note of $500, drawn by Blackshaw and indorsed by Boycott, an arrangement was made by which the note in suit was given, its sole consideration, as stated by one of the witnesses, being the surrender of the $1,000 note of the same parties alleged to be held by the appellant as collateral security for the note of Blackshaw above mentioned. After the note in suit was given, it was discovered that the note for $1,000 had never been indorsed by the payees, Blackshaw, Boycott and Bayliss, that it had not been protested for nonpayment and that the payees alleged that the appellant held it not as collateral security for the note of Blackshaw but simply and solely for the purpose of having it discounted for the benefit of the payees, which had never been done. When, therefore, the note in suit became due its payment was resisted on the ground that it was given upon the representation made by the appellant that he was an innocent holder of the surrendered $1,000 note for value, which representation it was alleged was false.

As to many of the facts of the case there was no dispute. It was not disputed that the Iron City & Hammondville Improvement Company on the 9th of April, 1892, made its promissory note payable to the order of Blackshaw, Boycott & Bayliss, for a valuable consideration, and delivered the note to the payees therein named, the individual stockholders of the corporation having indorsed the said note as the note now in suit. It was not denied that this note was, as a matter of fact, as between the drawer and the payees, paid in full. It was not denied that Brown represented to the parties interested at various times that he was the holder of this note as collateral security for a note of $500 given by Blackshaw to Boycott and indorsed by him, which said note had been discounted by the appellant or which he had discounted for their benefit. There was no dis-

pute as to the fact that so far as the drawer and indorsers of the note in suit were concerned at least part of the consideration for it was the surrender of the $1,000 note given to Blackshaw, Boycott & Bayliss and held by the appellant at the time of its maturity. The affidavit of defense set out the most of the facts hereinbefore recited in extenso and declared that the appellant never was the bona fide holder of the said $1,000 note and that he, the appellant, "well knew at the time he procured defendant's indorsement to the note in suit that defendant was not liable on the thousand dollar note.

*Errors assigned* were, (1) overruling plaintiff's objection to defendant's offer of testimony as follows:

Defendant's counsel propose to prove by this witness that the $1,000 note of the Hammondville Land & Improvement Company was paid in full by the Hammondville Land & Improvement Company before it was delivered by Boycott to Brown, the plaintiff. Also, that Brown represented to Mr. Giffin, or to Mr. Hunter, in his presence, that he held this note for money advanced to this firm of Boycott, Bayliss & Company; that he was the innocent holder of it for value and that he received it before maturity. To be followed by the testimony of other witnesses that the representation as to the holding of the note was false, and the manner in which it was held.

(2–6) Errors in answers to points and in the portions of the charge of the court, reciting same, which may be summarized as follows:

1. The court below erred in holding the defense set up in the affidavit of defense as being a defense based upon fraud and in admitting evidence to show fraud. 2. The court erred in instructing the jury that under the facts of this case the alleged representations of the plaintiff that he held the $1,000 note as collateral security if false was a fraud and he could not recover.

*A. H. Mercer*, for appellant.—There is no averment of fraud in the affidavit of defense: Clark v. Patridge, 2 Pa. 13; Renshaw v. Gans, 7 Pa. 117; Hunter v. McHose, 100 Pa. 38; Howard v. McKee, 82 Pa. 409.

*Levi Bird Duff*, for appellee.

OPINION BY BEAVER, J., July 16, 1896 (after stating the facts as set out above in the statement of facts) :

On the trial of the cause in the court below the defendant, William W. Giffen, one of the indorsers, being upon the stand, made the following offer: "Defendant's counsel proposes to prove by this witness that the thousand dollar note of the Hammondville Land & Improvement Company was paid in full by the Hammondville Land & Improvement Co. before it was delivered by Boycott to Brown, the plaintiff; also that Brown represented to Mr. Giffen or to Mr. Hunter in his presence that he held this note for money advanced to this firm of Boycott, Bayliss & Co.; that he was the innocent holder of it for value and that he received it before maturity; to be followed by the testimony of other witnesses that the representation as to the holding of the note was false and the manner in which it was held." Objection was made to the offer " for the reason that, even if it was proven to be true, it would not be a matter of defense in this action." The objection was overruled and the evidence admitted, and this is assigned for error as the first of the appellant's seven assignments which we are called upon to consider. This offer, so far as it went, was competent testimony and relevant to the issue trying and was, therefore, properly admitted. The appellant in his argument seems to admit this, for little if anything is said in regard to that assignment of error.

The remaining assignments of error are grouped and discussed by the appellant under two general propositions:

" 1. The court below erred in holding the defense set up in the affidavit of defense as being a defense based upon fraud and in admitting evidence to show fraud.

" 2. The court erred in instructing the jury that under the facts of this case the alleged representation of the plaintiff that he held the one thousand dollar note as collateral security if false, was a fraud and he could not recover."

The significance of the first of these propositions is based upon a rule of the court of common pleas of Allegheny county so comprehensive in itself and so useful in practice that we reproduce it here in full, as well for the purpose of having it before us for future use as for the consideration of the appellant's argument in regard to the rules of the court below.

" Rule 8. Sec. 1. In all actions on recognizances, judgments and other records, mortgages, mechanics' liens, policies of insurance, book accounts, bills, notes or other instruments of writing for the payment of money, and on all contracts for the payment of money, whether the same be in writing or not, and in all actions founded on contract, express or implied (whether in form ex contractu or ex delicto) where the debt or damages can be liquidated without the aid of a jury, the plaintiff shall file with or before his declaration a specification of the items of his claim, together with a statement of the facts necessary to support it, verified by affidavit, to which defendant shall, within the time hereinafter specified, file an answer verified by affidavit, and such items of the claim and material averments of fact as are not directly and specifically traversed and denied by the answer shall be taken as admitted.

" Sec. 2. If the specification and statement be filed with the præcipe, they shall be taken as an affidavit of claim, and defendant shall, without further notice, file his answer thereto within the time required for filing affidavits of defense, which answer shall be taken as an affidavit of defense. If the specification and statement be not filed with the præcipe the plaintiff shall within ten days after filing the same, notify the defendant thereof, and defendant shall within ten days thereafter file an answer thereto.

" Sec. 3. This rule shall apply to a specification and statement of set-off filed by defendant, who shall, within ten days after filing the same, notify the plaintiff thereof, and the plaintiff shall, within ten days after notice thereof, file his reply thereto, verified by affidavit. If the plaintiff fails to comply with any of the requirements of this rule, judgment of non pros shall be entered against him by the prothonotary; and if the defendant fails to comply with any of the requirements hereof, the plaintiff shall be entitled to judgment against him as for default of a plea and affidavit of defense.

" Sec. 4. No evidence will be heard upon the trial of the cause as to any facts not substantially alleged or referred to as a ground of action or matter of defense in the statements then on file in the cause. Either party may at any time before the cause is placed on the trial list, supplement his affidavit, as of course, giving notice thereof in writing to the opposing counsel,

within ten days of the filing of such supplemental affidavit; but after the cause has been placed on the trial list, such supplemental affidavit shall be filed only by special allowance of the court, and upon such terms as to notice, costs and continuance, as may be deemed just and proper under all the circumstances of the case."

The fourth section of this rule provides that no evidence will be heard upon the trial of the cause as to any facts not substantially alleged or referred to as a ground of action or matter of defense in the statements then on file in the cause. A careful examination of the testimony admitted shows that the defendant in the court below was not allowed to give in evidence any facts which were not substantially alleged or referred to in his affidavit of defense. It is true that the affidavit does not allege in terms a fraud practised upon the defendant and yet the facts set forth are capable of no other construction. It is not necessary in the affidavit, even under this rule of court, to set forth a legal conclusion based upon the facts therein stated. The general object of an affidavit of defense is to prevent the entry of judgment and under the rule of the court of Allegheny county, supra, the defendant must at the same time fully apprise the plaintiff of all the facts upon which he relies as a defense. This we think was done in the affidavit which was filed in this case with fullness and particularity, and gave the appellant full notice of the defense which was made at the trial and substantially of all the facts which constituted that defense.

The appellant's second proposition is that the court erred in instructing the jury that, under the evidence in the case, the alleged representation of the plaintiff that he held the thousand dollar note as collateral security, if false, was a fraud and he could not recover. The appellant in his argument fairly states the law in regard to representations of the kind relied upon in this case, namely: "First, that the misrepresentation was of a material matter; second, that the misrepresentation was relied upon and produced the contract defended against." Representations alleged to be fraudulent as in this case, in order to constitute a defense, must be, first, of a fact and not a mere expression of opinion; second, must be false to a material extent; third must be made under such circumstances that a party has a right to rely upon them; and fourth, must be relied upon: Jenkins v. Long, 81 Am. Dec. 374.

The representations made by the appellant and not denied were as to the manner in which he held the note for $1,000 given by the Iron City & Hammondville Improvement Company to Blackshaw, Boycott & Bayliss. These representations were material and of substance. Having the note in his possession and demanding its payment, those who were alleged to be liable for its payment had a right to rely upon his representations in regard to the same. They were relied upon, for as is testified by one of the indorsers, they constituted the consideration for the note in suit, and this is not denied by the appellant, except that he alleges that they were only part of the consideration. The only element, therefore, necessary to constitute fraud was the falsity of the representations. This was submitted to the jury for its finding and the verdict establishes the fact. The representations made by the appellant to three different parties interested in the note held by him and interested in the giving of the new note upon which this suit is brought undoubtedly led to the making of the note in suit. Without those representations, no such note would ever have been given. If the representations were false, the contract itself was based upon a fraud. Whether the representations were made to Eccles personally or to others interested with him in the transaction makes but little difference. The contract was based upon the representations made by Brown and the only substantial question of fact for the jury was to determine whether he held the note under the circumstances alleged by him to be true or whether the opposite state of facts alleged by the witness Boycott was the true one. The falsity of the appellant's statements being determined, all the other elements necessary to constitute a fraud were affirmatively shown in the case without substantial contradiction. Hunter, the attorney of Carr, Giffen and Fraser all testify to the representations made by Brown which are not denied by him. Hunter testifies in one place that the only object in visiting Brown was to ascertain whether or not he held the note as an innocent holder for value. It is true that he says subsequently that he represented Carr and desired to have the note lifted in such a way as to save Carr who was joint indorser with the other individual indorsers. Giffen testifies that Brown's possession and surrender of the thousand dollar note was at the least part of the consideration for the note in

suit. These parties as appears by the evidence were interested in the same way and to the same extent as Eccles the defendant. The latter is not only an individual indorser with those to whom these representations were made, but as the treasurer of the Iron City & Hammondville Improvement Co., he signed the note. He indorsed it in the same way, and also indorsed it is an individual. It cannot be pretended that the contract, founded in what the jury finds by its verdict to be false representations and therefore fraudulent, was made by Eccles in his representative capacity and that, when as an individual he came to indorse the note, he did not rely upon the same representations which led to the making of the note; the facts to which these representations related being, so far as the defendant was concerned, the consideration therefor.

Whilst it is true, therefore, that the court did not say to the jury in terms that the false representations must be relied upon by the defendant, all the testimony in the case shows conclusively and without substantial contradiction that this representation was relied upon and that it was the consideration, at least so far as the defendant was concerned, for the note in suit. As among themselves, the individual indorsers of this note were doubtless joint indorsers, that is were jointly liable for the amount thereof and bound to contribute equally to its payment. They so held themselves, as Hunter testifies, in regard to the old note of $1,000, and his desire was to have them so held upon the new note. Whether this were so as to the holder, it was undoubtedly true as among themselves; so that we would have the strange anomaly of three of five joint indorsers relying upon false representations as to a material fact which constituted the consideration of a contract and one of the other indorsers not relying upon it, and that, too, when the latter had signed and indorsed the note as treasurer of the corporation which was the primary obligor. If the groundwork of the contract entered into by the Iron City & Hammondville Improvement Company were laid in fraud, it can hardly be claimed that Eccles, the indorser, would be held by his indorsement, even if the false representations upon which the contract were based had never been communicated to him. Where, in a contract between the vendors and vendee of goods, it was agreed that the latter should pay to the former ten shillings per ton beyond the market price,

which sum was to be applied in liquidation of an old debt due to one of the vendors, the payment of the goods was guaranteed by a third person but the bargain between the parties was not communicated to the surety, held that that was a fraud on the surety and rendered the guaranty void: Pidcock v. Bishop, 3 Barn. & Cress. 605; 10 Eng. C. L. Rep. 276.   The testimony, as developed in the trial of the case, clearly shows that the indorsers of the note in suit were under no legal liability to Brown, the appellant, upon the note for $1,000 held by him and, as the consideration for a contract must have some value and reality, the assumption of a supposed danger or liability which has no foundation in law or fact is not a valuable or sufficient consideration and will not, therefore, support a contract based upon it: Cabot v. Haskins, 3 Pick. 83.

Under all of the facts, as shown in this case, and upon a careful review of the entire testimony, to which we have given full consideration, we are of the opinion that no error was committed by the court, either in the admission of the testimony, the answer to the point of the appellant or in the general charge.   The assignments of error are, therefore, all overruled and the judgment is affirmed.