# Harding & Dubois, Appellants, *v.* Horace Lloyd.

*False pretense—Province of court and jury—Inadequate charge.*

The essence of the crime of false pretense is the intent, but the foundation of a contract is the assent of two minds meeting upon common ground. The failure of a trial judge to distinguish in his charge between what constitutes the crime of false pretense and what false representations will avoid a contract, is such error as to require reversal.

*Contract—False representations to avoid a contract.*

The foundation of a contract is the assent of two minds meeting upon common ground. If that assent is based upon false representations made by one party to the contract and believed and relied upon by the other, there is no real foundation for the assent and the law holds the contract void.

*Contract—Misrepresentation of facts.*

Misrepresentations of a material fact, which were relied on by the plaintiff and which he had a right to rely on, and which induced his assent to the contract, constitute such a fraud as will avoid the contract. Brown v. Eccles, 2 Pa. Superior Ct., 192, followed.

*Practice, Superior Court—Assignments of error—Points.*

Where no points are submitted to the court, criticism of the charge of the court, in an assignment of error, as to what is not contained in such charge is unfair to the court, and such assignment, not having been specially allowed as an exception, will be disregarded.

Argued Nov. 16, 1896.   Appeal, No. 30, Nov. T., 1896, by plaintiffs, from judgment of C. P. Chester Co., Jan. T., 1895, No. 62, on verdict for defendant.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Sheriff's interpleader to determine ownership of certain goods. Before WADDELL, P. J.

The issue was a sheriff's interpleader directed by the court below to determine the ownership of certain goods claimed by the plaintiffs and levied upon by the sheriff under a writ of fieri facias, wherein Horace Lloyd was plaintiff and E. P. Jester defendant, as the property of the said E. P. Jester.

The plaintiffs in the interpleader were manufacturers and wholesale dealers of shoes in the city of Philadelphia.   The defendant was an execution creditor of one E. P. Jester, who had a retail store in Phœnixville, Chester county, Pa.   A lot of

shoes levied upon in Jester's store under the execution of the defendant was claimed by the plaintiffs, who alleged that said shoes had been procured of them by Jester by fraud, and that said fraud vitiated his title thereto and entitled them to take possession of the same. The testimony of fraud and false representations is sufficiently indicated and set out in the opinion of the Superior Court. The value of the goods was $180.

Verdict for defendant in the interpleader. Plaintiffs appealed.

*Errors assigned* were (1–4) to the charge of the court; (5) in submitting to the jury the construction of the language testified to by plaintiffs' witness as to the representations relied on; and in not instructing the jury that if they believed the representations as testified to by plaintiffs' witnesses that the goods in dispute were parted with on the faith and credit of such representations, in that event the verdict should be for the plaintiffs; (6–8) error in charge of the court (the language of the judge's charge and the objections thereto are sufficiently indicated in the opinion of the Superior Court).

*R. J. Monaghan*, with him *Samuel D. Ramsey*, for appellants.—The plaintiffs were entitled to have the jury instructed in the precise language of the exception noted, which constitutes the fifth assignment of error.

The charge of the learned trial judge, it is believed, correctly instructed the jury as to the law in cases of fraudulent insolvency, but entirely overlooked the fact that the case at bar was one of obtaining goods under false pretenses, to which the principles laid down by him were inapplicable: Meyerhoff v. Daniels, 173 Pa. 559; Brown v. Eccles, 2 Pa. Superior Ct., 197.

The learned trial judge submitted to the jury whether there was an intent on the part of the vendee at the time of the sale to defraud the seller. This point, it is believed, was immaterial: Regina v. Dawson, 29 Law Jour. (Eng.), 263.

The charge of the learned trial judge was inadequate and unfair in that it did not sufficiently present the plaintiffs' theory of the case: Richards v. Willard, 176 Pa. 204; Minich v. Gring, 1 Pa. Superior Ct. 484.

It was the province of the jury to find the disputed facts, but the duty of the court to declare the effect of them when found: Beihofer v. Loeffert, 159 Pa. 365.

*Thomas W. Pierce,* for appellee.— It requires artifice, trick or false pretense as a means of obtaining possession to avoid the purchase. There must be bad faith, an intent at the time to defraud the seller: Rodman v. Thalheimer, 75 Pa. 237; Wessels v. Weiss Bros., 156 Pa. 597.

OPINION BY BEAVER, J., January 18, 1897:

We are somewhat reluctant to send this case back for a re-trial. The evidence as to whether the alleged false representations made by Jester, the plaintiffs' vendee, were made for the purpose of securing credit for future purchases or for the purpose of inducing them to carry his notes for purchases previously made is not as clear and satisfactory as it should be. If for the latter purpose, there could, of course, be no recovery in this case. If for the former, it should clearly appear.

Jester, the common debtor of plaintiffs and defendant, having become indebted to the plaintiffs, after a course of dealing extending through several years, and his account being unsatisfactory, was sent for by the plaintiffs on or about October, 1893, for the purpose of discussing the condition of his account as it then was and his financial condition. There is little question that the object of the visit was to discuss the then present indebtedness. The conversation at the time was with Mr. Harding "upon the subject of his (Jester's) bills—his indebtedness," who, after detailing the particulars of the conversation said in answer to questions which were rather leading in their character:

"Q. Was or was not the purpose of your conversation with him to learn his financial condition? A. His financial condition; that is just what it was. Q. Was or was it not with a view of continuing the line of credit? A. It certainly was. Q. Did you continue the line of credit by reason of those representations? A. We certainly did. Q. Would or would not you have continued the line of credit, if the statements had not been made that were made by Mr. Jester? A. If he had given me a statement as he gave here to-day, I certainly would not have continued him in business."

Mr. Dubois, the other plaintiff, speaking of the same conversation and the report in regard to it, as made by Mr. Harding, says:

"Q. Was the report satisfactory or not? A. Decidedly. Q. By virtue of that, did you continue to extend him a line of credit? A. Yes, sir. Q. And the sales you made after that, did you make them upon faith in the representations that he then made? A. Yes, sir, I felt well in doing it, because he (Harding) was satisfied that everything was correct that Mr. Jester told him; and under those conditions, it made it easier for me, because I didn't have to have any more controversy with him in regards to that subject. It made it very pleasant after that time."

The same witness, who at a later date visited Phœnixville for the purpose of consulting Jester in regard to his account and the manner in which he met his commercial paper and the help which it was necessary for the plaintiffs to extend to him in taking up his notes, says, in answer to questions put to him upon the subject:

"Q. Did you continue to sell Jester goods? A. I took an order from him on that day, settled up his account from about February until that date and got notes from him. He gave them to me and said he hoped there would be care from this out taken of the notes. Q. Was or was it not agreed between you and Mr. Harding that he should have a continuation of his line of credits? A. I got home; he was satisfied with what I told him and we continued to sell him up to three days before the time of his failure. Q. Did you continue to sell him on the faith of the representations? A. Yes, sir, because I believed what Mr. Jester said, and I am sorry I (?) didn't keep on."

The evidence as to the representations made by Jester in these several conversations and the question of their falsity was submitted to the jury, as well as the fact as to whether or not the plaintiffs had relied upon them in their subsequent dealings with Jester. We are called upon to consider the manner in which this evidence was submitted to the jury for their finding.

The appellant has placed upon record eight several assignments of error, all of them except the fifth dealing with the charge of the trial judge in the court below. After reading the clear and concise per curiam opinion in Rodman v. Thal-

heimer, 75 Pa. 237, in which the question as to whether or not the insolvency of a vendee of goods and his knowledge of it are in themselves such fraud as will set aside a sale and enable the vendor to rescind a contract and replevy the goods, after they have come fairly and fully into the possession of the vendee, is passed upon and decided in the negative, the trial judge goes on to say: " Now that is the principle of law that governs this case. It is not enough that false representations were made by Mr. Jester, but it requires artifice, trick or false pretense, in order to obtain possession of the goods, and there must be bad faith in the transaction and intent at the time to defraud the seller. You will see how far these representations made by Mr. Jester, testified to by Mr. Harding, if they took place as Mr. Harding tells you they did—how far they sustain the requirements of the law, as I have read them to you, whether they were communicated to Mr. Harding for the purpose of obtaining possession of the goods and with the intent to defraud these plaintiffs." This part of the charge is covered by the first assignment of error. We think the assignment must be sustained. It is probable that the trial judge intended to say, following the language in Rodman v. Thalheimer, supra, that it is not enough that the *insolvency* and the mere knowledge of it were such a fraud as to set aside the sale and enable the seller to rescind, etc., it requires artifice, trick or false pretense, in order to obtain possession of the goods. But the rule laid down in Rodman v. Thalheimer did not apply in this case. If false representations were made as to a material fact concerning which Jester had knowledge and the plaintiffs had not, and those representations were made for the purpose of obtaining future credit and were relied upon by the plaintiffs, they *were* a false pretense and were in themselves sufficient to constitute fraud. The language in this part of the charge in regard to the intent of Jester to defraud the plaintiffs, as also that upon the same subject in the second, third and fourth assignments of error, is not a correct representation of the law in a civil proceeding. It was said in Smith v. Smith, 21 Pa. 367, a case which has been somewhat severely criticised of late, although not as to this part of it: " We reject the strictness required in the evidence of fraudulent intent in the criminal offence of false pretence, because a man is chargeable civilly but not crimi-

nally for the fraud of his agent and also for the legitimate consequences of a dishonest representation, whether he intended to defraud or not." It is true the Supreme Court says in the case from which the trial judge read that "There must be bad faith or intent at the time to defraud the seller," but this remark was made in connection with the declaration that "The law in this state is not that insolvency and the mere knowledge of it are such a fraud as to set aside the sale and enable the seller to rescind and to replevy the goods, after they have come fully and fairly into the possession of the purchaser." Where there are false representations, the intent to defraud is to be presumed and in themselves constitute the false pretense which will vitiate a sale, if relied upon by the vendor. In Meyerhoff v. Daniels, 173 Pa. 555, where goods had been obtained through the alleged false representations of an agent, Mr. Justice GREEN, in delivering the opinion of the court, says : " The whole case should have gone to the jury with instructions that, if they believed that the goods in question were obtained by means of false representations made by Guggenheimer (the agent of the defendant) the verdict should be in favor of the plaintiff."

In his statement of the question to be determined by the jury in the charge in the court below, the trial judge says : " You are here simply to settle the question, Were these goods obtained by Mr. Jester by fraud, false representations, false allegations on his part? " If he had stopped there, no fault could be found with his statement of the question, but he goes on to say, "If they were and he acted deliberately, intentionally and with the purpose of defrauding these people, then no title passed to him." As already intimated, he evidently had in his mind the elements which constitute the crime of false pretense. The essence of a crime is the intent. The foundation of a contract is the assent of two minds meeting upon common ground. If that assent is based upon false representations made by one party to the contract and believed and relied upon by the other, there is no real foundation for the assent and the law holds the contract void. The failure to make this distinction runs throughout the entire charge and is found in the parts thereof assigned for error in the first, second, third and fourth assignments, which we are compelled to sustain. The recognized rule as to what representations will avoid a

contract was stated by us in Brown v. Eccles, 2 Pa. Superior Ct. 197.

No points were submitted to the court below by the plaintiffs. The criticism of the charge of the court, therefore, contained in the fifth assignment of error as to what is *not* contained therein is scarcely fair to the court; and, inasmuch as it does not seem to have been specially allowed as an exception, it is disregarded. As to the other assignments of error they are sufficiently passed upon by what we have said as to the first four.

It would have been more satisfactory to us, if the testimony introduced by the defendant had been printed, so that we could have determined more definitely just what were the issues of fact presented to and passed upon by the jury. The questions for the jury, as we understand the testimony, were : Were the representations of Jester, as testified to by the plaintiffs, actually made? Were they made for the purpose of securing from them future credit? Were they false? Were they relied upon by the plaintiff? If these were the issues passed upon and found for the defendant in the verdict, it should not be disturbed, but the court being in error in the instruction to the jury as to the necessity for finding that there was intent on the part of Jester to defraud the plaintiffs at the time the representations alleged to be false were made by him, the case must be retried. Judgment reversed and a new venire awarded.