## Peck, Phillips & Wallace Company, Limited, for use of John Fullerton & Son, *v.* M. H. Stevenson, Appellant.

*Debtor and creditor—Sale for payment of particular debts—Fraud.*

A sale by a debtor at a full price, intended by both buyer and seller for the payment of particular debts of the vendor is a lawful sale and none the less so because other creditors may be prevented or hindered by it from obtaining payment.

*Fraud—Misrepresentation—Expression of opinion.*

The essential element of fraud arising out of a misrepresentation is, that it must be of a fact, and not the mere expression of opinion.

Argued April 27, 1897. Appeal, No. 120, April T., 1897, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1895, No. 364, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Assumpsit. Before WHITE, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $163.17. Defendant appealed.

*Errors assigned* among others were (2) In charging the jury as follows : " The agreement between them, as evidenced by the typewritten copy which is in evidence here, undoubtedly required defendant to pay all the debts of that firm ; the language clearly conveys that idea, and it would not be an honest sale, really, for the firm to sell all its property and all its accounts to a party, unless they intended to provide for all their debts." (3) In charging the jury as follows : " An insolvent firm may make an assignment—what we call a voluntary assignment—and if that is duly recorded, then all the creditors come in and get their share ; but our law prohibits an assignment so as to give a preference to certain creditors. If a man or a firm is not able to pay all his or its debts, he has no right to transfer that property over for a part of his debts, and leave part unprovided for. Making an assignment in that way is virtually a voluntary assignment and would be a violation of our assign-

ment law. It is true that an insolvent firm or man may make an honest, bona fide sale of a part of its property, and if the purchaser pays an honest price for it, not knowing of any intention to cheat the creditors, he would take a good title; but when a man takes all the property that another has, not only all the property, but all his accounts and business, the fair presumption would be that he would pay the debts; because that would be the honest way of doing business; and, I say, on that basis, this agreement was evidently drawn." (4) In charging the jury as follows: "Now, it is very clear and manifest from that language that Stevenson was to take all the property and interest in that firm, and to pay all their debts. . . . There was a claim of $800, and under the printed language here the defendant would be bound to pay the whole of it, as every other debt." (5) In charging the jury as follows: "I would say, gentlemen, that it is very awkwardly worded; it is a very awkwardly worded sentence, and while I would give that interpretation to it, yet it is very awkwardly worded. If it had referred alone to that Whitesell account, it ought to have said, 'the balance of that account,' or 'the Whitesell account to be paid out of the accounts collected.' It does not say that; it says, 'balance from accounts.' It is indefinite and uncertain, and the contention on the part of the defendant is that that was put there to qualify the previous clause, which made him liable for all the debts of the firm, as shown by their books of account." (6) In charging the jury as follows: "Well, now, to transfer that clause to the other seems a very harsh construction, and a very awkward way of expressing it. . . . Suppose that clause, 'balance from accounts,' to be added; how would it read? 'Defendant assuming to pay,' etc., and 'the indebtedness of said firm, as shown by their books of account, balance from accounts.' Does that make good sense?" (7) In charging the jury as follows: "If you find, gentlemen, from the evidence, that the clause, 'balance from accounts,' was intended to change and modify that part of the agreement which made him liable for all the debts . . . . then you find for the defendant; otherwise your verdict ought to be for the plaintiff." (9) In not affirming defendant's second point, which said point and the answer thereto are as follows: "2. As it is not shown by Fullerton & Son that their claim is an indebtedness of the said firm as shown

538 PECK, PHILLIPS & WALLACE CO. *v.* STEVENSON.

Assignment of Errors—Opinion of the Court. [6 Pa. Superior Ct.

by their books of account, there can be no recovery. *Answer :* That is refused. According to the testimony, even of the defendant himself, he admitted that this account of Fullerton & Son was a claim, and a valid claim against the firm of Peck, Phillips & Wallace Company, Ltd." (10) In not affirming, unqualifiedly, defendant's third point; which said point and the answer thereto are as follows : "3. If the jury believe from the evidence, that defendant was to pay the indebtedness of said firm only out of the collections he made, the plaintiff cannot recover without showing that the defendant has collected in more money than he paid out. *Answer :* I would affirm the first part of that point, but refuse the latter part, because the burden would be on the defendant to show that he had not collected enough to pay the accounts ; and you have his testimony that he did not." (13) The undisputed testimony being that just before the agreement in suit was signed, the balance due on the Whitesell judgment had been paid and satisfied of record, the court erred in not instructing the jury that the words, "balance from accounts," could not, therefore, apply to the Whitesell judgment, but must apply to the indebtedness of said firm, as shown by their books of account, except $380, which was to be paid by the warrant of the Supreme Commandery.

*M. H. Stevenson,* with him *J. R. Braddock,* for appellant.

*J. G. White,* for appellee.

OPINION BY BEAVER, J., February 19, 1898 :

The legal plaintiffs, being considerably involved and having numerous executions against them in the hands of the sheriff, made a sale of their entire business property, including accounts, to the defendant for a price not alleged to be inadequate, so as to pay the claims of the execution creditors and certain others named in the articles of agreement, under and in pursuance of the terms of which the sale was made. There was no allegation or intimation of fraud. The defendant took possession of the property, paid the claims of the execution creditors and, as he alleges, paid in addition more than he was bound to do under the terms of the agreement. The use plaintiffs brought suit in the name of the legal plaintiffs for the recov-

ery of a claim against them which they allege in their statement the defendant agreed to pay, alleging that the defendant had "agreed (inter alia) to pay the debts of the said limited partnership with such exceptions as said agreement will show." The agreement was produced by the defendant and given in evidence by the plaintiffs.

That portion of the agreement, the construction of which is in controversy, reads as follows: "Now, therefore, this agreement witnesseth, that, in consideration of the sum of two hundred dollars, to be paid in cash, and the assuming of such fees as may be due to R. H. Jackson, Esq., their attorney, and the indebtedness of said firm, as shown by their books of account, except three hundred and eighty dollars due on note of eight hundred dollars due to Whitesell & Sons, same to be paid by warrant of Sup. Commandery, balance from accounts, the said Peck, Phillips & Wallace Company, Limited, hereby agrees to sell, assign, transfer and set over unto the said M. H. Stevenson all its right, title and interest in the lease, stock, machinery, type, fixtures, good-will, business and everything belonging thereto, together with all the accounts outstanding, it being the intent to sell and assign to the said M. H. Stevenson the entire plant and business as owned and conducted by said firm at Nos. 43 and 45 Shiloh St., Pittsburg."

In reference to this agreement, the trial judge in the court below, as complained of in the second assignment of error, said: "The agreement between them, as evidenced by the typewritten copy which is in evidence here, will undoubtedly require defendant to pay all the debts of that firm. The language clearly conveys that idea, and it would not be an honest sale really for the firm to sell all its property and all its accounts to a party, unless they intended to provide for all their debts." In this there was double error. The agreement does not require the defendant to pay "all the debts of the firm," but only such as were contained in their books of accounts, nor is it true that "it would not be an honest sale for the firm to sell all its property and all its accounts to a party, unless they intended to provide for all their debts." It was held in the York County Bank v. Carter, 38 Pa. 446, that "A sale by a debtor at a full price, intended by both buyer and seller for the payment of particular debts of the vendor, is a lawful sale and none the less so, be-

cause other creditors may be prevented or hindered by it from obtaining payment. Such is the doctrine of Uhler v. Maulfair, 23 Pa. 481, and such is everywhere the doctrine of the common law, except where a bankrupt law exists." This has been followed in very many cases since that time. This practically disposes of the second, third and fourth assignments of error, which must be sustained.

The court practically left it to the jury to say what the construction of the phrase "balance from accounts," taken in connection with the sentence in which it occurs, should be, giving their own views in regard to the matter in the language which is complained of in the fifth and sixth assignments of error. It was the duty of the court to construe this agreement which, under the undisputed evidence, does not seem to be doubtful. Jackson, the attorney of the legal plaintiffs at the time the agreement was signed, and Stevenson both testified that the balance of the Whitesell & Sons judgment, save the $380 mentioned in the agreement, had been actually paid by the defendant to the sheriff, before the agreement was signed, and as to this there is practically no denial. If that were so, there was no balance of the Whitesell & Sons' judgment or claim to be provided for, after the $380 mentioned in the agreement, and the words " balance from accounts " must and could only be held to apply to the balance of other claims against the legal plaintiffs which were to be paid out of the proceeds of the accounts against their debtors. The testimony of the defendant that he had not collected enough from the accounts to pay the claims against the legal plaintiffs found upon their books, and that he had actually paid out more money than had been or could be collected, was practically undisputed. The fifth, sixth, seventh, tenth and thirteenth assignments of error are, therefore, sustained.

The eleventh and twelfth assignments are not sustained. There is no evidence of any fraud upon the part of the legal plaintiffs in representing the condition of their accounts, and it would seem, from the defendant's own testimony, that he had discovered, before the agreement was signed, that many of the accounts were worthless and uncollectible and, that for that reason, at his instance, the phrase "balance from accounts " was inserted for his protection. At the most, Peck's representations, according to Stevenson's testimony, amounted to no more

than the expression of an opinion: "He remarked to me, 'Mr. Stevenson, I think those accounts are all collectible, except perhaps $25.00.' Mr. Wallace told me about the same thing, and I did, on that assurance, undertake to collect in the accounts and pay the indebtedness." One of the essential elements of fraud arising out of a misrepresentation is, that it must be of a fact, and not the mere expression of opinion: Brown v. Eccles, 2 Pa. Superior Ct. 192; Southern Development Co. v. Silva, 125 U. S. 247.

The interests as well as the obligations of the legal plaintiffs and those of Charles F. Peck in the agreement are easily severable and, in view of that fact, we think the suit was properly brought.

As to the first assignment of error the testimony as to conversations between the legal and equitable plaintiffs on the one side and the defendant on the other was, when received, competent and relevant. There is no evidence upon the record of any exception to the refusal of the motion to strike it out, nor is there any exception to the admission of the evidence itself. It is, therefore, not sustained.

The equitable plaintiffs failed to show that their account was included in "the indebtedness of said firm, as shown by their books of account" and the testimony of the defendant that it was not so shown was undenied. The defendant's second point should, therefore, have been affirmed, and the ninth assignment of error is sustained.

The equitable plaintiffs, having elected to take advantage of the written agreement entered into between the legal plaintiffs and the defendant, and having declared thereupon, are bound by its terms. It was their duty to show that they were included within the debts of the legal plaintiffs to be paid by the defendant. Having failed to do this they are not entitled to recover, and the jury should have been so instructed.

The judgment is reversed.